C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
LAMOR WHITEHEAD,

                           Plaintiff,

            - against -

YELEN ENTERTAINMENT LLC and
LATASHA TRANSRINA KEBE,

                        Defendants.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

23-cv-5229 (BMC)

**COGAN**, District Judge.

      Plaintiff, formerly a high-profile pastor of an entity known as "Leaders of Tomorrow International Ministries Inc.," brought this defamation action in state court, alleging that defendant Latasha Kebe (known professionally as "Tasha K"), a "media personality, blogger, and YouTuber," used her various platforms to broadcast defamatory statements that plaintiff had engaged in financial improprieties and criminal activities. He also claimed that she invaded his right to privacy. Defendants removed the case to federal court based on diversity of citizenship. Presently before me is the motion of Yelen Entertainment LLC, the production company for defendant Kebe, to dismiss for failure to state a claim. The motion is granted for the reasons set forth below.

# BACKGROUND

I. **Summary of Complaint**

Plaintiff, who refers to himself as "Bishop Whitehead," is a self-described "dynamic preacher, prophet, teacher, community leader, and entrepreneur," whose entrepreneurial activities include commercial real estate investing. Defendant Kebe, a "media personality," earns a living from advertising revenue across her various social media outlets, including Instagram, Facebook, and Twitter. Collectively, she has nearly 1 million followers. The business entity defendant, Yelen Entertainment, is an alter ego of Kebe.

The complaint alleges that in May 2023, Kebe posted videos on social media that plaintiff contends contained the following six defamatory statements:

1. [The U.S. government] found that you [plaintiff] bought your two-million-dollar mansion with only ten dollars in the bank.
2. The m_f_ [plaintiff] tried to use me [Kebe] to intimidate witnesses in a [criminal] case.
3. Foxy Inga [Brown] was his [plaintiff's] connect and has been helping him with his so called credit card fraud. Using m__f__'s identity to get credit cards. She was the one that will tell him [plaintiff], "its [sic] hot, its cold," do this do that.
4. So apparently, let me tell you what he [plaintiff] did. The church that he had wasn't a church that he bought. He knew the owners of the church. They needed to refinance their church but couldn't do that, but [sic] didn't have the credit to do it. So, what he did was told them to transfer the deed to his name. They were supposed to go get the church refinanced, get a lower rate, he'll give the church back to them at that rate. It was supposed to be an even exchange like that. But I guess they took too long to do the refinance or didn't work out. So, what he did was evicted them out of his property because they signed the deed over to him. Now he evicted them right in the middle of his federal investigation, which could be considered fraud.
5. The f'king Justice Department is going to get a gag order on him so he can't talk about a goddam think [sic] online.
6. [N-word] your m__f__ assets are frozen.

Yelen has submitted the complete videos containing these statements. Plaintiff complains that the videos go beyond the face of the complaint, but his complaint directly quotes her statements and he cannot isolate snippets from their full context, as the statements are

incorporated by reference in their entirety. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (for Rule 12(b)(6) purposes, the complaint includes statements incorporated by reference or those that are "integral" to the complaint); Gargiulo v. Forster & Garbus Esqs., 651 F. Supp. 2d 188, 190 (S.D.N.Y. 2009) (dismissing defamation action and deeming "the affidavits containing the allegedly actionable statements" to be incorporated by reference).

II.     **Other Relevant Proceedings**

In addition to plaintiff's counsel's since-granted motion to withdraw subsequent to the full briefing of defendant's motion to dismiss, three events have occurred that could bear on the determination of this motion.

First, my docket reflects that Kebe has filed for protection under Subchapter V of Chapter 11 of the Bankruptcy Code in the Southern District of Florida. In re Kebe, No. 23-14082 (Bankr. S.D. Fla.). I have stayed the instant case as to her in light of that filing. See 11 U.S.C. § 362(a). Her proposed amended plan of reorganization indicates that the bankruptcy filing was the result of a defamation judgment obtained by the performer Cardi B. against Kebe for around $4 million in the Northern District of Georgia, Almanzar v. Kebe, No. 19-cv-1301 (WMR) (N.D. Ga. 2022).

An amended schedule of creditors lists plaintiff's claim as a $360,000 unliquidated and disputed claim. However, it does not appear that plaintiff has filed a proof of claim in the bankruptcy and the bar date passed nearly a year ago; accordingly, the amended plan of reorganization does not provide for any distribution to him. A hearing on the Chapter 11 plan is scheduled for September 24, 2024.

Second, plaintiff has been sued by a religious organization known as Glory of God Global Ministry, Inc., for defrauding it out of its real estate by promising to obtain refinancing

3

for its mortgage and forging deeds to convey the property to himself.  See Glory of God Global Ministry, Inc. v. Whitehead, No. 511827/23 (Sup. Ct. Kings Cnty. 2023) (the "Deed Fraud Case").

Third, plaintiff has been convicted and sentenced to nine years' custody for wire fraud, attempted wire fraud, attempted extortion, and making false statements.  See United States v. Whitehead, No. 22-cr-692 (LGS) (S.D.N.Y. Judgment June 17, 2024) (the "Federal Criminal Case").

Again, plaintiff complains that I may not consider these other cases, but I can take notice of judicial proceedings in the public record.  See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings.")

## DISCUSSION

### I. Defamation Claims

Three fundamental principles of defamation law control the outcome of defendant's motion.

First, New York has codified the common law fair reporting privilege.  N.Y. Civ. Rights L. § 74.  This privilege immunizes "fair and true" reports of statements made in judicial proceedings, regardless of proof of malice or negligence.  See Wexler v. Allegion (UK) Ltd., 374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019).  Thus, to the extent Kebe was reporting on judicial proceedings, her remarks are not actionable, so long as her statements were "a substantially accurate description of the allegation."  See id.; see also Cholowsky v. Civiletti, 69 A.D.3d 110, 115, 887 N.Y.S.2d 592, 596 (2d Dep't 2009) (statements protected by absolute privilege where "the publications explicitly stated that they were describing the criminal proceeding").

Second, truth is an absolute defense to claims of defamation. Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236, 242 (2d Cir. 2017). To the extent Kebe's statements have been confirmed as true by plaintiff's criminal conviction, her remarks are not actionable. See Kennedy v. City of New York, No. 12-cv-4166, 2015 WL 6442237, at *13 (S.D.N.Y. Oct. 23, 2015) ("assertions of falsity founder on the fact that the alleged statements concerned events for which [plaintiff] was ultimately convicted").

Third, under New York law, expressions of opinion by a declarant are not actionable, even if those opinions cast aspersions on the person who is the subject of those opinions. See Ganske v. Mensch, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020).

Applying these principles here, plaintiff has failed to state a claim.

Plaintiff's first alleged defamatory statement – that he "bought a two-million-dollar mansion with only ten dollars in the bank" – is a fair report of the indictment in the Federal Criminal Case, which alleged that:

> … in an effort to obtain a mortgage in excess of $1.3 million to fund WHITEHEAD's purchase of a home in Paramus, Whitehead alter[ed] bank statements . . . to indicate that [the account] had an average balance in excess of two million dollars, when in fact during that time period AMS LLC had an average ending balance of less than ten dollars.

Similarly, plaintiff's fourth alleged defamatory statement – that he tricked the Glory of God Ministry out of its property – is a fair summary of the complaint in the Deed Fraud Case, which alleged, among other things, that:

> At all times material to these presents plaintiff Glory of God believed, based on representations made by defendants that she was re-financing or modifying her mortgage so that she could obtain and make more affordable payments. In reality, Defendant Lamor Whitehead acting in collaboration and connivance with defendants and others known and unknown, conspired and schemed to defraud plaintiff, and willfully and knowingly, devised a scheme and FILED: KINGS COUNTY CLERK 05/09/2023 12:56 PM INDEX NO. 511827/2023 NYSCEF DOC. NO. 17 RECEIVED NYSCEF: 05/09/2023 4 of 20 artifice to defraud and

5

> obtain plaintiff's money and property by means of false and fraudulent pretenses, and in furtherance thereof illegally and fraudulently obtained appointment to act as trustee of the 5904 Foster Avenue Trust and would be forced through illegal self-help to vacate her church building soon thereafter.

Plaintiff's second, fourth, and fifth challenged statements, when viewed in context, are statements of opinion and therefore not actionable.

As to the second alleged defamatory statement – that plaintiff "tried to use" Kebe "to intimidate a witness in a case" – the entire video of her statement explains her view. She stated in the video that plaintiff encouraged her to publish stories critical of a government informant in the Criminal Case. Plaintiff does not allege Kebe's statement that he tried to do that is false; all he is complaining about is her conclusion he did that "to use her to intimidate a witness in a case." That is her opinion of his motive. It is not subject to a defamation claim.

Returning for a moment to plaintiff's fourth challenged statement – that his actions vis-à-vis the Glory of God Ministry "could be considered fraud" – that is not only a fair report of the Deed Fraud Case, but Kebe's own opinion of what it might mean. It is an opinion and therefore not actionable.

The fifth challenged statement – that the government "is going to get a gag order" – was Kebe's prediction about what the government might do in light of plaintiff's public condemnation of the investigation against him. It was speculation, not a statement of fact, and therefore her opinion of what might happen in the future. It is also nonactionable.

Turning to the final two allegedly defamatory statements – that plaintiff's "assets are frozen" and that he was involved in "so-called credit fraud" by "using [people's] identity to get credit cards," these appear substantially true. As to the latter, he had previously been convicted in state court of 15 counts of identity theft stemming from his use of credit cards in other people's names. See People v. Whitehead, No. 539-07 (Suffolk Cnty. Ct. 2008). As to the

6

former, the Federal Criminal Case included a Forfeiture Order and a Restitution Order totaling nearly $200,000, and the Court did not impose a fine because it determined that plaintiff could not afford it. That may not be quite "freezing" defendant's assets, but it is a substantially true statement of the results of his criminal conviction. See Chau v. Lewis, 771 F.3d 118, 131 (2d Cir. 2014) (affirming dismissal where statement "could have produced no worse an effect on the mind of the reader than the truth").

In sum, none of the statements plaintiff alleges are defamatory. They do not state a claim upon which relief may be granted.

**II.      Right of Privacy Claim**

Plaintiff has also asserted a claim under New York Civil Rights Law § 51. That statute prohibits the use of a person's "name, portrait, picture, likeness or voice . . . for advertising purposes" without consent. That is not what is going on here at all, as the quarrel between plaintiff and Kebe has nothing to do with Kebe trying to get a commercial advantage by misappropriating plaintiff's name or image. Kebe used plaintiff's image in reporting on a subject of public interest. The cases make clear such use does not violate the statute. See, e.g., Edme v. Internet Brands, Inc., 968 F. Supp. 2d 519, 528 (E.D.N.Y. 2013).

The claim is therefore dismissed.

## CONCLUSION

Defendant's motion to dismiss is granted. The case remains stayed as to defendant Kebe pending further proceedings in the bankruptcy case. The stay shall be implemented by administratively closing this case subject to reopening upon conclusion of the bankruptcy case.

**SO ORDERED.**

																			*Brian M. Cogan*
																			U.S.D.J.

Dated: Brooklyn, New York
			August 5, 2024